(December 15, 2011)

■ TIFFANY APPLEWHITE et al., Appellants, v ACCUHEALTH, INC., et al., Defendants, and CITY OF NEW YORK, Respondent. [934 NYS2d 164]—

The record demonstrates that plaintiffs filed the note of issue on May 8, 2009. This required the City (defendant) to file a motion for summary judgment no later than 120 days after the filing of the note of issue, i.e., September 5, 2009 (CPLR 3212 [a]). However, because September 5th was a Saturday, and Monday, September 7th, was Labor Day (*see* General Construction Law § 25-a [1]), the motion defendant served on September 8, 2009, was timely.

The facts underlying this case are discussed in a decision on a prior appeal (81 AD3d 94 [2010]). Accordingly, this decision will relate only those facts necessary to a full understanding of this decision.

The infant plaintiff suffered anaphylactic shock during a home infusion of medication called Solu-Medrol. Her mother called 911 while the nurse who had been giving the home infusion commenced CPR. Two emergency medical technicians (EMTs) arrived, but only in a basic life support (BLS) ambulance because an advanced life support (ALS) ambulance was not available at the time the mother placed her call. While one of the EMTs assisted the nurse with CPR, the other left the apartment to request an ALS ambulance, because the ambulance that arrived first lacked a stretcher, a valve mask and a defibrillator. During that time, the mother made a second call to 911. Some time thereafter, paramedics arrived in an ALS ambulance. These paramedics administered epinephrine and oxygen to infant plaintiff and then transported her to the hospital. She survived, but suffered significant brain damage.

Plaintiffs commenced this action against the City of New York because it administered the ambulance service through the fire department. After plaintiffs filed the note of issue, defendant moved for summary judgment. The motion court granted that motion. Plaintiffs appealed.

As a threshold issue, we must determine the capacity in which the City was acting. When the City acts in a proprietary capacity, it is subject to the same principles of tort law as a private entity (*Miller v State of New York*, 62 NY2d 506, 511 [1984]). By contrast, discretionary acts, such as the failure to issue a license, can never be a basis for damages (*McLean v City of New York*, 12 NY3d 194, 202 [2009]). Similarly, public entities are not usually liable for claims arising out of the performance of a government function (ministerial acts) (*id.*). "[A] municipality is not liable to a person injured by the breach of a duty—like the duty to provide police protection, fire protection or ambulance service—that the municipality owes to the general public" (*Laratro v City of New York*, 8 NY3d 79, 82-83 [2006]).

However, liability for ministerial acts may arise where there exists a special relationship between the injured party and the public entity that creates a special duty of protection to the injured party (*see McLean*, 12 NY3d at 201). To establish that a municipality owes a special duty, a plaintiff must demonstrate four elements: " '(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking' " (*Mastroianni v County of Suffolk*, 91 NY2d 198, 204 [1997], quoting *Cuffy v City of New York*, 69 NY2d 255, 260 [1987]).

Plaintiffs posit that we must analyze this case under general tort principles because the emergency medical services (EMS) personnel were allegedly negligent in their provision of medical care, and provision of medical care is not a government function. Conversely, the City argues that the provision of emergency medical services is a government function that requires proof of a special duty as a basis for liability.[1]

Under the facts of this case, defendant was acting in a ministerial capacity. Plaintiffs fault defendant for failing to bring oxygen to the apartment, for advising the mother that she should wait for the ALS ambulance and for waiting for the ALS ambulance that arrived 20 minutes later instead of taking the infant plaintiff to the hospital that was four minutes away. Absent are allegations that defendant provided medical treatment in an improper manner. Thus, this case is not like *Kowal v Deer Park Fire Dist.* (13 AD3d 489 [2004]), in which it was not necessary to establish a special relationship where a municipal paramedic mistakenly placed an endotracheal tube in the plaintiff's esophagus thereby causing her death (*see also Fonville v New York City Health & Hosps. Corp.*, 300 AD2d 623, 624 [2002] [claims based upon improper treatment were not subject to special relationship analysis]).

---

1. The City concedes that "plaintiffs are correct that acts of misfeasance may render the special duty doctrine inapplicable" but insists that what occurred here was an act of nonfeasance that does require a special relationship before liability can attach. In *McLean* (12 NY3d 194 [2009]), the Court of Appeals did not discuss the doctrine of a special duty or relationship in terms of misfeasance and nonfeasance, but clearly intended to apply the special relationship doctrine to all acts that constitute a government function. Accordingly, we will not evaluate this case using a distinction between nonfeasance and misfeasance. We merely distinguish proprietary functions from ministerial functions.

Here, the gravamen of plaintiffs' claim is that defendant should have transported the infant plaintiff to the hospital immediately rather than waiting an additional 20 minutes for the ALS ambulance to effectuate transport. This claim involves the quintessential purpose of the municipal ambulance system—transporting the patient to the hospital as quickly as possible. Thus, defendant's poor advice and failure to transport is much closer to the performance of a government function than to the proprietary act of a medical provider caring for a patient. Accordingly, defendant's actions were ministerial and the special relationship doctrine applies.

Pursuant to that doctrine, dismissal of the complaint was improper because defendant assumed a special duty toward this plaintiff. The first element of a special relationship is the assumption of an affirmative duty to act.[2] Here, the first ambulance to arrive at plaintiffs' home was a BLS ambulance that did not have the necessary equipment to treat infant plaintiff. Despite her mother's request to take the child to the nearby hospital immediately, the EMTs allegedly assured the mother that it would be better for infant plaintiff to wait at the home until an ALS ambulance arrived with paramedics and proper equipment. Under these alleged circumstances, the assurances and advice of the emergency personnel constituted an assumption, "through promises or actions, . . . to act on behalf of [infant plaintiff]" for the purposes of determining a special relationship (*Cuffy v City of New York*, 69 NY2d 255, 260 [1987]).

The parties do not dispute the second factor, knowledge on the part of the municipality's agents that inaction could lead to harm, and the third factor, some form of direct contact between the municipality's agents and the injured party. The main point of contention centers around the fourth factor in the special relationship analysis—justifiable reliance. Defendant contends that the mother could not have relied on anything they said or did. This misses the point. The record reflects that the mother asked the EMS technicians to take her daughter to Montefiore Hospital, only four minutes away. The EMS technicians responded that it was preferable to wait for the ALS ambulance and continued to administer CPR. The EMS technicians made the decision not to transport the child immediately and to call for the ALS ambulance to effectuate transport. At no point did defendant communicate to the mother that the ALS ambulance would take another 20 minutes to arrive for the subsequent

---

**2.** Because the motion court found no justifiable reliance, it did not reach this issue.

transport. The mother justifiably relied on the EMS technicians, who had taken control of the emergency situation, and who elected to await the arrival of the ALS ambulance.

It is irrelevant that the mother's affidavit in opposition to a different motion by defendant nurse Russo did not specifically allege that she asked the EMTs to take infant plaintiff to the hospital. This amounts to, at most, a triable issue of fact or a credibility determination, neither of which is appropriate for resolution on this motion for summary judgment (see *Powell v HIS Contrs., Inc.*, 75 AD3d 463, 465 [2010]).

The issue of proximate cause also cannot be resolved on the existing record. There are triable issues regarding whether the infant plaintiff's brain damage could have been altogether avoided or, at the very least, mitigated. The expert affidavits do not resolve the cause and severity of the injuries, but instead raise material issues of fact. Concur—Mazzarelli, J.P., Andrias, Catterson and Moskowitz, JJ.