[861 NE2d 95, 828 NYS2d 280]

Richard Laratro et al., Respondents, v City of New York et al., Appellants, et al., Defendants.

Argued November 16, 2006; decided December 21, 2006

**POINTS OF COUNSEL**

*Michael A. Cardozo, Corporation Counsel,* New York City (*Deborah A. Brenner, Julie Steiner* and *Barry P. Schwartz* of counsel), for appellants. I. The Appellate Division majority erroneously reinstated plaintiffs' complaint as against the City of New York by finding a question of fact as to whether plaintiff's coworker and friend who called 911 on his behalf could be his supposed "agent" to satisfy the "direct contact" element of the "special relationship" exception to municipal immunity from liability. The majority's ruling is contrary to this Court's precedent as it has dangerously expanded the "direct contact" prong to include a category of individuals who do not have a "close relationship of interests" with the injured party. Expanding the exception in this manner will very likely increase a municipality's exposure to liability, could discourage municipalities from providing vital public services, and could practically render the "special relationship" exception a nullity by opening the door to an endless number of individuals who may claim "direct contact." (*Cuffy v City of New York,* 69 NY2d 255; *Pelaez v Seide,* 2 NY3d 186; *Lauer v City of New York,* 95 NY2d 95; *Kircher v City of Jamestown,* 74 NY2d 251; *O'Connor v City of New York,* 58 NY2d 184; *Sorichetti v City of New York,* 65 NY2d 461; *Adderley v City of New York,* 304 AD2d 485, 100 NY2d 511; *Stata v Village of Waterford,* 225 AD2d 163; *Merced v City of New York,* 75 NY2d 798; *Baez v City of New York,* 309 AD2d 679.) II. In any event, and notwithstanding the Appellate Division majority's belief, there was no question of fact as to whether the City of New York's supposed voluntary undertaking lulled plaintiff's coworker into a false sense of security causing her to forgo other available avenues of relief. First, the Emergency Medical Service operator only told the coworker that help would be there "as soon as possible," with no specific time given. Second, although the coworker claimed that, had she known an ambulance would not arrive for 30 to 35 minutes, she would have taken plaintiff to the hospital herself, she should have known that her

speculative and self-serving estimate that the ambulance would arrive in 10 minutes was incorrect at the time the second call for help was made over 16 minutes after her initial call. Finally, the coworker unreasonably remained in the office for another 14 minutes after the second call, during which time any further reliance on the City's purported assurances could no longer be deemed justified. (*Cuffy v City of New York,* 69 NY2d 255; *Kircher v City of Jamestown,* 74 NY2d 251; *Apostolakis v Centereach Fire Dist.,* 300 AD2d 516; *Sandstrom v Rodriguez,* 221 AD2d 513; *Grieshaber v City of Albany,* 279 AD2d 232, 96 NY2d 719; *Clark v Town of Ticonderoga,* 291 AD2d 597, 98 NY2d 604.)

*Walter G. Alton, Jr. & Associates,* New York City (*Walter G. Alton, Jr.* and *Richard J. Montes* of counsel), and *Mauro Goldberg & Lilling LLP,* Great Neck (*Kenneth Mauro* of counsel), for respondents. I. This Court should affirm the First Department's decision to reinstate plaintiffs' complaint as it is consistent with the purpose of the special relationship exception and does not expand liability any further than originally intended. (*De Long v County of Erie,* 60 NY2d 296; *Cuffy v City of New York,* 69 NY2d 255; *Riss v City of New York,* 22 NY2d 579; *Kircher v City of Jamestown,* 74 NY2d 251; *Florence v Goldberg,* 44 NY2d 189; *S.C. Freidfertig Bldrs. v Spano Plumbing & Heating,* 173 AD2d 454; *Greene v City of New York,* 205 AD2d 584; *Adderley v City of New York,* 304 AD2d 485; *Stata v Village of Waterford,* 225 AD2d 163; *Yearwood v Town of Brighton,* 101 AD2d 498.) II. Alternatively, this Court should affirm the First Department's decision for reasons other than those stated by the First Department. (*Sorichetti v City of New York,* 65 NY2d 461; *Cuffy v City of New York,* 69 NY2d 255; *Kovit v Estate of Hallums,* 4 NY3d 499; *Kircher v City of Jamestown,* 74 NY2d 251; *Kromer v County of Onondaga,* 26 AD3d 792; *Riss v City of New York,* 22 NY2d 579; *Yearwood v Town of Brighton,* 101 AD2d 498.) III. The First Department properly held that a reasonable jury could find that Ms. Edelson justifiably relied upon the City of New York's assurances of help. (*Adderley v City of New York,* 304 AD2d 485; *Stata v Village of Waterford,* 225 AD2d 163.)

**OPINION OF THE COURT**

SMITH, J.

Protecting health and safety is one of municipal government's most important duties. Since municipalities are run by human beings, they sometimes fail in that duty, with harmful, even cat-

astrophic, consequences. When that happens, as a general rule, the municipality is not required to pay damages to the person injured. The rationale for this rule is that the cost to municipalities of allowing recovery would be excessive; the threat of liability might deter or paralyze useful activity; and thus the net result of allowing recovery would be to make municipal governments less, not more, effective in protecting their citizens.

We have recognized a narrow exception to the general rule of nonliability where the injured person had a "special relationship" with representatives of the municipality. We hold that this case, in which it is claimed that the City of New York was slow in responding to a 911 call placed by plaintiff's coworker, does not fit within the exception.

## Facts and Procedural History

Plaintiff suffered a stroke at his office. Carol Edelson, his coworker and friend, found him sitting at his desk with his head in his hands, unable to respond to questions. Edelson told him she would call an ambulance, and dialed 911 from a telephone a few feet away.

A 911 operator employed by New York City told Edelson that an "ambulance will be there to help you as soon as possible." The ambulance did not come until 35 minutes later, however, allegedly because the operator, when he transmitted Edelson's request, negligently understated the seriousness of plaintiff's condition, describing him only as "sick." Edelson testified that, if she had known that the ambulance would take half an hour or more to arrive, she would have arranged to have plaintiff driven to the hospital in a private car.

Plaintiff suffered brain damage, made worse, according to expert testimony he submitted, by the delay in getting him to a hospital for treatment. He brought this action for damages against the City of New York and its agencies (collectively the City) and other defendants. Supreme Court granted the City's motion for summary judgment dismissing the complaint. The Appellate Division reversed, one Justice dissenting. We now reverse and reinstate Supreme Court's order.

## Discussion

In *Cuffy v City of New York* (69 NY2d 255 [1987]), we explained the "special relationship" exception to the well-established rule that a municipality is not liable to a person injured by the breach of a duty—like the duty to provide police

protection, fire protection or ambulance service—that the municipality owes to the general public. We said in *Cuffy*:

> "There exists . . . a narrow class of cases in which we have recognized an exception to this general rule and have upheld tort claims based upon a 'special relationship' between the municipality and the claimant. The elements of this 'special relationship' are: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking." (*Id.* at 260 [citations omitted].)

Plaintiff here does not satisfy either the third or the fourth requirement of the *Cuffy* test, because plaintiff did not have direct contact with, and did not rely on any undertaking by, the City's 911 operator. We decide the case on that ground, and do not reach the issue of whether the 911 operator's statement ("The ambulance will be there to help you as soon as possible") was specific enough to be an "affirmative undertaking" on which a party could justifiably rely.

Our decision is controlled by *Kircher v City of Jamestown* (74 NY2d 251 [1989]). In *Kircher*, the plaintiff was abducted in a car. The abduction was witnessed by two people; they got the car's license number and gave it to a police officer, who told them he would "call it in" (*id.* at 254). Relying on the officer's assurance, the witnesses stopped their efforts to help the plaintiff, but the officer did not report the incident, and the plaintiff was not rescued until after she had been brutally assaulted and raped. We held that the plaintiff could not recover against the city for the officer's negligence.

We decided that the plaintiff in *Kircher* could not show either direct contact or reliance, as *Cuffy* requires, because she "could not even communicate with the police, much less rely on any promise of protection the police might have offered" (74 NY2d at 258). We rejected the suggestion of a dissenting judge that the contact and reliance by the witnesses who reported the crime "be transferred to the plaintiff's benefit" (*id.* at 258, 265). A similar analysis applies here. Plaintiff, unable to communicate by reason of his stroke, could not either contact or

rely upon the 911 operator, and Edelson's contact and reliance cannot be "transferred" to plaintiff's benefit.

Plaintiff argues that *Kircher* is distinguishable on two grounds: Edelson was a longtime friend and coworker of plaintiff here, while the witnesses in *Kircher* were strangers to the plaintiff in that case; and plaintiff here was physically near to Edelson when she called 911, while the plaintiff in *Kircher* was far away when the witnesses reported her abduction to the police. We find neither distinction persuasive. To adopt either would undermine an important reason for the direct contact and reliance requirements, which serve "as a basis for rationally limiting the class of citizens to whom the municipality's 'special duty' extends" (*Cuffy*, 69 NY2d at 261).

Our cases have accepted direct contact and reliance by someone other than the plaintiff as sufficient to create a special relationship only where the person making the contact was acting on behalf of his or her immediate family. Thus in *Sorichetti v City of New York* (65 NY2d 461 [1985]) we found a special relationship where a mother had sought the help of the police to protect her six-year-old daughter; and in *Cuffy* we found a special relationship where a man sought police protection for his wife and the children who lived with him—but we rejected a claim made on behalf of an adult child who was not a member of his household. To hold, as plaintiff here asks, that direct contact and reliance by a friend or a person standing nearby can create a special relationship would unacceptably dilute the general rule of municipal nonliability. The exception is reserved for a few, "special" cases of which this is not one.

Accordingly, the order of the Appellate Division should be reversed with costs, and the order of Supreme Court granting the City's motion for summary judgment should be reinstated. The question certified should be answered in the negative.

Chief Judge KAYE and Judges CIPARICK, ROSENBLATT, GRAFFEO, READ and PIGOTT concur.

Order reversed, etc.